UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VASKEN ASADOURIAN,

       Plaintiff,

       v.

KUNI GERMAN MOTORS, LLC dba
KUNI BMW, LLC, an Oregon limited
liability company; KUNI BEAVERTON
MOTORS, LLC, fka KUNI CADILLAC
& BMW, LLC, an Oregon limited
liability company; and KUNI
ENTERPRISES, INC., dba KUNI
AUTOMOTIVE, an Oregon corporation,

       Defendants.

Civil No. 07-240-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

       Plaintiff Vasken Asadourian alleges that his former employer and related companies, Kuni German Motors, LLC (dba Kuni BMW, LLC), Kuni Beaverton Motors, LLC (fka Kuni Cadillac & BMW, LLC), and Kuni Enterprises, Inc. (dba Kuni Automotive) (collectively "Kuni" or "defendants") discriminated and retaliated against him in violation of 42 U.S.C. § 2000e *et*

Page 1    OPINION AND ORDER

*seq.* (Title VII), O.R.S. 659A.030, and 42 U.S.C. § 1981.  Defendants filed a Motion for Judgment on the Pleadings or, in the Alternative, Petition to Compel Arbitration and Stay Proceedings [16].  Because of both parties' reliance on extrinsic evidence, the court construed defendants' motion as a Motion for Summary Judgment, allowed 30 days for additional discovery, and ordered supplemental briefing.  The court heard oral argument on December 10, 2007.  For the following reasons, defendants' motion [16] is granted.

I.  **BACKGROUND**

The following facts are undisputed unless otherwise noted and are stated in the light most favorable to plaintiff.

Plaintiff is a former employee of Kuni Cadillac & BMW, an automobile dealership located in Beaverton, Oregon.  Kuni Cadillac & BMW was divided into two separate divisions, one division selling Cadillacs and Saabs, and another division selling BMW's.  Deposition of Plaintiff ("Pl. Dep.") at 23:13-15.  Throughout plaintiff's career with Kuni, he worked in the Kuni BMW division.  *Id.* at 23:16-18.  Plaintiff began his employment in April 2001 as a technician in the BMW Service Department.  Compl. ¶ 15.  He was later promoted to the supervisory position of shop foreman where he supervised thirteen to fourteen technicians. *Id.*

On or about the first day of plaintiff's employment, on April 3, 2001, he signed an Acknowledgment and Receipt of Kuni Cadillac & BMW, LLC, Employee Handbook.  Answer, Ex. 1; Pl. Dep. 31: 17-22.  The Acknowledgment references an arbitration provision ("2001 Agreement) in the handbook and asserts that plaintiff reviewed the provision and agreed to follow and be bound by it.  Answer, Ex. 1.  The arbitration provision itself states that "(a)ny dispute or claim which arises out of or relates to employment with the Company ... shall be

resolved by arbitration." *Id.* It also states that the parties to the arbitration agreement "(e)xpressly agree to waive the right to a jury trial" and that arbitration will be governed by either the Arbitration Service of Portland, Inc. or the American Arbitration Association. *Id.* Kuni Cadillac & BMW was owned by Kuni Automotive, but is no longer in existence. At the time of plaintiff's employment, Kuni BMW LLC, Kuni Cadillac LLC, and Kuni Saab LLC were all assumed business names for Kuni Beaverton Motors. Kuni Beaverton Motors is a subsidiary of Kuni Enterprises, doing business as Kuni Automotive. On May 1, 2005, after the termination of plaintiff's employment, Kuni BMW became an assumed business name of Kuni German Motors.

In May 2002, Kuni updated its handbook and arbitration agreement. Shortly thereafter, plaintiff arrived at work to find a note in his mailbox that employees would be called into meetings in small groups. Asadourian Decl. ¶ 2. The note did not indicate that the meeting had anything to do with an arbitration agreement. *Id.* When plaintiff's group was called in, Laura Carlisle handed the employees the agreement [presumably the acknowledgment of the 2002 Handbook] and indicated that they were required to sign it. *Id.* ¶ 3. Page 16 of the 2002 handbook includes a section called "Arbitration of Disputes." Revised Declaration of Laura Carlisle in Support of Defendants' Reply ("Revised Carlisle Decl."), Ex. A. The 2002 handbook defines "the Company" as "Kuni Cadillac-Saab, Kuni BMW." Carlisle Decl, Ex. A.

Carlisle stood looking over the employees, waiting for them to sign. *Id.* ¶ 4. Plaintiff alleges that her facial expression, body language, and voice indicated impatience. *Id.* Carlisle responded angrily when an employee who had brought a recording device attempted to record the meeting. *Id.* According to plaintiff, no discussion about an arbitration agreement or

Page 3    OPINION AND ORDER

alternative dispute resolution agreement took place during the meeting. Pl. Dep. at 55:11-21. Carlisle did not indicate she was available for questions. Pl. Dep. at 65:6-9. When plaintiff, whose first language is not English, took longer than other employees to sign, Carlisle stood near him, waiting. Pl. Dep. 10:20-21; 66:16-18. Plaintiff signed and dated his "Acknowledgment and Receipt" for the 2002 handbook on May 23, 2002, at the end of the group meeting he attended. Revised Carlisle Decl., Ex. A; Pl. Dep. at 52:13-17. After plaintiff signed the acknowledgment, Carlisle quickly took it from him, and she did not provide him with a copy. *Id.* ¶ 5.

During the same meeting, Kuni also presented employees with an Alternative Dispute Resolution Agreement ("2002 ADR Agreement") and asked the employees to sign that document as well. Carlisle Dep. at 19:13-17. Plaintiff has no independent recollection of the 2002 ADR Agreement, although the record indicates plaintiff signed the 2002 ADR Agreement that same day. P1. Dep. at 42:14-21 53:11-14; Answer, Ex. 2; Carlisle Dep. at 18:18- 19: 17. The 2002 ADR Agreement includes the following:

> **What Claims Would be Covered by this Agreement:** Specifically, this would include any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination or harassment, whether based on . . . Oregon, Washington or Colorado's anti-discrimination laws as well as all other applicable state or federal laws or regulations to the extent they may be subject to binding arbitration agreements) that would otherwise require or allow resort to any court or other govermental dispute resolution forum between me and the Company... arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise . . . Any such claim shall be submitted to and determined exclusively by binding arbitration. I further understand and voluntarily agree that this alternative dispute resolution program shall also cover claims of discrimination or harassment under Title VII of the Civil Rights Act of 1964, as amended.
>
> My signature below attests to the fact that I have read, understand, and voluntarily agree to be bound to all of the above terms. **Do not sign until you have read the above acknowledgment and agreement.**

Page 4    OPINION AND ORDER

Answer, Ex. 2. (emphasis in original). Carlisle does not remember plaintiff asking any questions, nor does plaintiff assert that he asked any questions. Carlisle Dep. at 18:8-13.

Plaintiff presents evidence that fellow employee Rick Kersey, who did not want to sign the agreement, had not been advised that he had any choice, or that any meeting would be available if he did not want to sign it. Kersey Decl. ¶¶ 4- 5. Rather, after Kersey had not signed the agreement two to three weeks after it was presented to him, manager Mark Robison came to Kersey and convinced him to sign. Kersey Decl. ¶ 6. Kersey told Robison he did not feel comfortable signing. Kersey Decl. ¶ 6. Robison refused to allow Kersey any additional time to review the agreement and advised him that he should look for another job if he did not sign the agreement promptly. Kersey Decl. ¶ 6. Although Kersey specifically stated that he was signing under protest, at no point was he given any kind of document stating that he had the option of not signing the agreement, or even advised that such a document existed. Kersey Decl. ¶¶ 4, 6.

On April 8, 2005, plaintiff was terminated. On February 20, 2007, plaintiff filed this suit alleging discrimination and retaliation on the basis of his race and national origin.

## II.   ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

On summary judgment, the court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655

(1962).  Defendant, the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party.  *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 248-49.  There must be specific, admissible evidence identifying the basis for the dispute.  *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980).

**B.  Discussion**

Plaintiff contends that no valid arbitration agreement was formed, because at least two different entities had been named in plaintiff's employment documents, yet the 2002 ADR Agreement mentions generally the "the Company."  In the alternative, plaintiff argues that the 2001 and 2002 arbitration agreements are unconscionable.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . .  The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . .

9 U.S.C. § 4.

"The arbitrability of a particular dispute is a threshold issue to be decided by the courts." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1268 (9th Cir. 2006) (en banc).  The FAA mandates enforcing arbitration agreements where such agreements are (1) written; (2) part of a contract or transaction involving interstate commerce; and (3) valid under general principles of contract law.  9 U.S.C. § 2.  In analyzing whether an arbitration agreement is valid and enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."  *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

The burden is on the party opposing arbitration to proffer evidence demonstrating that the agreement is invalid.  *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000). Further, "[t]he federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (internal quotations omitted)).

### 1.     The Validity of the Agreement

Plaintiff asserts that no valid agreement was formed because plaintiff's employment documents referred to at least two entities as his employer, yet the 2002 ADR Agreement refers only to "the Company."  The court disagrees.

Plaintiff's complaint states that he "was employed by [each of the] defendants" listed in the action.  Compl. ¶ 15. The 2002 Handbook defines "the Company" as "Kuni Cadillac-Saab,

Kuni BMW." Carlisle Decl. ¶ 2, Ex. A. Kuni Cadillac-Saab and Kuni BMW are assumed business names for Kuni Beaverton Motors. *Id.* Kuni Beaverton Motors, LLC, is a subsidiary of Kuni Enterprises, doing business as Kuni Automotive. Carlisle Decl. ¶ 5. This evidence shows that "the Company" refers to each of the defendant entities who plaintiff pled were his employers: Kuni BMW, LLC, Kuni Beaverton Motors LLC (dba Kuni Cadillac & BMW), and Kuni Automotive. Accordingly, the 2002 Agreement validly binds plaintiff and the three defendant entities.

### 2. Unconscionability

Plaintiff asserts that both the 2002 ADR Agreement and 2001 Agreement are unconscionable, and therefore, invalid. The court disagrees.

Although the arbitration clause is governed by the FAA, this court applies Oregon law to determine whether it is unconscionable. *Sprague v. Quality Rests. NW, Inc.*, 162 P.3d 331, 333 (Or. Ct. App. 2007) (citing 9 U.S.C. § 2; *Motsinger v. Lithia Rose-FT, Inc.*, 156 P.3d 156 (Or Ct. App. 2007)). "Under Oregon law, unconscionability is based on the facts as they existed at the time the contract was formed." *Id.* (citing *Best v. U.S. Nat'l Bank*, 739 P.2d 554 (Or. 1987)). "[T]he party asserting unconscionability... bears the burden of demonstrating that the arbitration clause is unconscionable." *Id.* Oregon courts consider both procedural unconscionability (contract formation) and substantive unconscionability (contract terms), and consider a number of factors in making these evaluations:

> The primary focus . . . appears to be relatively clear: substantial disparity in bargaining power, combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable. Unconscionability may involve deception, compulsion, or lack of genuine consent, although usually not to the extent that would justify

>rescission under the principles applicable to that remedy. The substantive fairness of the challenged terms is always an essential issue.

*Vasquez-Lopez v. Beneficial Oregon, Inc.*, 152 P.3d 940, 948 (Or. Ct. App. 2007) (quoting *Carey v. Lincoln Loan Co.*, 125 P.3d 814, 828 (Or. Ct. App. 2005)), *aff'd*, 157 P.3d 775 (2007). "Thus, both procedural and substantive unconscionability are relevant, although only substantive unconscionability is absolutely necessary. With that proviso, each case is decided on its own unique facts." *Id.*

### i. Procedural Unconscionability

Procedural unconscionability "refers to the conditions of contract formation and focuses on two factors: oppression and surprise." *Vasquez-Lopez*, 152 at 948 (internal quotation omitted). Oppression involves "an inequality of bargaining power . . . and an absence of meaningful choice." *Id.* (quoting *Acorn v. Household Int'l, Inc.*, 211 F. Supp. 2d (1160, 1168 (N.D. Cal. 2002)). Surprise refers to the situation where "terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the terms." *Id.*

Here, as in *Sprague,* the arbitration agreement is not entirely free from procedural unfairness. Considering the facts in the light most favorable to plaintiff, it is a classic contract of adhesion, that is, an agreement between parties of unequal bargaining power, offered to the weaker party on a "take-it-or-leave-it" basis. *See* Kersey Decl. ¶ 6; *Sprague*, 162 P.3d at 334. "However, under Oregon law, the fact that a contract is adhesive does not alone render it unenforceable." *Sprague*, 162 P.3d at 334 (citing *Best*, 739 P.2d 554 at 556). Further, there is no evidence that the agreement was brought about by deception, as was the arbitration clause in *Vasquez-Lopez*. Here, like *Sprague*, the arbitration clause was "clearly and fully described in the employee handbook, with the key provisions set off in italics and boldface, the

Page 9   OPINION AND ORDER

acknowledgment form as well sets off the agreement in italics.  The language is not technical and the typeface is large." 162 P.3d at 334.

This court concludes that, "procedurally, the agreement was no more unconscionable than the typical employment, consumer, or service contracts that are a common feature of contemporary commercial life and that Oregonians sign (and Oregon courts enforce) as a matter of course."  *Id.*

### ii. Substantive Unconscionability

Substantive unconscionability refers to the terms of the contract and generally "focuses on the one-sided nature of the substantive terms." *Vasquez-Lopez*, 152 P.3d at 948 (internal quotation omitted).  Plaintiff's only argument with regards to substantive unconscionability is that the 2002 ADR Agreement requires plaintiff to pay for his own attorney and therefore "eviscerates the attorney fees provisions of plaintiff's statutory claims." Pl. Response, 4.  The court disagrees with plaintiff's interpretation of the 2002 ADR Agreement.

The 2002 ADR Agreement states: "I understand that I will have the right: (1) to hire legal representation, paid for by me." Barton Decl. Ex. B at Ex. 2.  However, the 2002 ADR Agreement also specifically states that "[r]esolution of the dispute shall be based solely upon the law governing the claims and defense pleaded, and the arbitrator may not invoke any basis . . . other than such controlling law." *Id.*  As acknowledged by defendants, this secures any statutory right plaintiff may have to make defendants pay for his attorney fees.  Further, the contract language cited by plaintiff only recognizes that defendants are not responsible for hiring an attorney for plaintiff at the outset, not that plaintiff would be precluded from eventually recovering applicable attorney fees.

Page 10    OPINION AND ORDER

Because the court finds that the 2002 ADR Agreement is not unconscionable, and therefore binding, the court need not reach whether the 2001 Agreement is unconscionable.

Finally, this court concludes that this case must be dismissed with prejudice, rather than stayed.  In cases in which a court decides that the arbitration agreement is valid and enforceable, it may either stay or dismiss the action.  *Nagrampa*, 469 F.3d at 1276-77.  Dismissal is proper "when all of the issues presented in a lawsuit are arbitrable."  *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001).  Plaintiff's action is covered wholly by the arbitration provision to which the parties agreed and dismissal is consistent with the "liberal federal policy favoring arbitration agreements."  *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

### III.  CONCLUSION

Based on the foregoing, defendants' Motion for Summary Judgment [16] is GRANTED.  For the reasons provided, plaintiff must seek arbitration for his claims in compliance with the employment agreements he entered into with defendants.  This case is dismissed with prejudice.

IT IS SO ORDERED.

DATED this    13    day of December, 2007.

        /s/ Ancer L. Haggerty
        Ancer L. Haggerty
        United States District Judge